UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| BRUCE STUART BOONE, SR. &, ) | Case Number 24-60405 |
| MEREDITH BOONE, ) | |
| ) | |
| _____Debtors._____ ) | |
| ) | |
| MATTHEW W. CHENEY, ) | |
| Acting United States Trustee For Region 4, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | AP No. _____ |
| ) | |
| BRUCE STUART BOONE, SR., ) | |
| ) | |
| _____Defendant._____ ) | |

**COMPLAINT TO DENY DISCHARGE**

Matthew W. Cheney, Acting United States Trustee for Region 4, by counsel, objects to the granting of a discharge to Bruce Stuart Boone, Sr. ("Defendant") and in support thereof states as follows:

*Introduction*

1. For many years, Defendant owned and successfully operated a construction business. When the business fell into financial trouble, it presented for payment factoring invoices that were not actually owed. The business filed for chapter 11. In the chapter 11, Defendant signed schedules for the business that included millions of dollars of accounts receivable that were not owed to the business. Defendant also testified at the Section 341 meeting that the schedules were accurate. In addition, while his business was in chapter 11, Defendant secretly diverted $50,000.00 from the business for his personal use. Defendant's diversion of $50,000.00 from his business's

1

bankruptcy estate and his false statements on his business's schedules and at the Section 341 meeting bar him from receiving a discharge.

### *Jurisdiction, Venue, Parties and Relevant People and Entities*

2. Defendant commenced a bankruptcy case on April 15, 2024, by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division. The filing of the petition commenced case number 24-60405 (the "Bankruptcy Case").

3. The case filed by Defendant was a joint case along with his spouse, Meredith Boone ("Mrs. Boone").

4. Defendant's Bankruptcy Case was converted to Chapter 7 by Order entered on July 19, 2024.

5. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. The statutory predicates for this complaint are 11 U.S.C. §§ 105 and 727.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9. Plaintiff is the Acting United States Trustee for Region 4 and consents to the Court's entry of a final order in this matter.[1]

10. Defendant is a Debtor in the underlying bankruptcy case, case number 24-60405.

---

[1] The United States Trustee is a Department of Justice official charged with, among other responsibilities, supervising bankruptcy case administration. 28 U.S.C. § 586(a)(3). United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049; *In re A-1 Trash Pickup, Inc.*, 802 F.2d 774, 775 (4th Cir. 1986). The United States Trustee is authorized to file a complaint objecting to Defendant's discharge. 11 U.S.C. § 727(c)(1).

11. This Complaint is timely filed.

12. Defendant lives in Appomattox County, Virginia in the Western District of Virginia.

13. Defendant is the owner of 51% of the equity interests in a District of Columbia corporation called JJB D.C., Inc. ("JJB DC") and one of two directors of JJB DC.

14. Defendant's spouse and co-debtor, Meredith Boone, is the owner of the remaining 49% of the equity interests in JJB DC and is the other director of JJB DC.

15. Defendant and Mrs. Boone founded JJB DC in 2003.

16. JJB DC was a construction company that primarily did utility work in the Washington D.C. area.

17. Defendant is an "insider" of JJB DC as defined under Section 101(31) of the Bankruptcy Code.

18. JJB DC is an "insider" of Defendant as defined under Section 101(31) of the Bankruptcy Code.

19. Beginning in early 2023 Ray Odom, Sr., became the chief executive officer (CEO) of JJB DC. Prior to that, beginning in 2020, Mr. Odom was JJB DC's chief operating officer (COO).

20. Prior to Mr. Odom becoming the CEO of JJB DC, Defendant had held that title.

21. While he was the CEO of JJB DC, Mr. Odom was the owner and president of an LLC called Raocore Technology, LLC ("Raocore"). Raocore was also sometimes known as "JJB Federal, LLC".[2]

---

[2] Raocore filed its own chapter 11 case in the Eastern District of Virginia on December 20, 2023 (Case No. 23-12080). Raocore's bankruptcy case was transferred to the D.C. Bankruptcy Court by Order dated March 1, 2024. In the D.C. Bankruptcy Court Raocore's case was assigned Case

3

22. Raocore was engaged in similar, if not identical, lines of work, including utility work, in the Washington D.C. area.

23. Although Mr. Odom became the CEO of JJB DC in early 2023, Defendant remained actively involved in the operations of JJB DC and had knowledge about the operations and financial affairs of JJB DC after Mr. Odom became the CEO of JJB DC.

24. At all relevant times, Defendant was the president, one of two directors and the majority owner of JJB DC.

***Factual Allegations Regarding JJB DC, its Bankruptcy Case, and Defendant's False Statements about Accounts Receivable Allegedly Owed to It***

25. In the fall of 2022 JJB DC won a contract directly with Verizon Sourcing, LLC ("Verizon") to perform utility work for Verizon in Washington, D.C.

26. Prior to winning the contract directly with Verizon, JJB DC had been a sub-contractor performing similar work for a third-party company that held the contract directly with Verizon.

27. JJB DC began having financial problems shortly after winning the Verizon contract because Verizon's construction needs slowed down and the third-party company that had previously held the Verizon contract reduced the amount of work it subcontracted to JJB DC.

28. JJB DC's primary source of credit was White Oak Commercial Finance, LLC ("White Oak").

29. The business relationship between White Oak's predecessors and JJB DC extended back to the early 2000s.

---

Number 24-00065. The D.C. Bankruptcy Court converted Raocore's case to chapter 7 on November 15, 2024.

4

30. White Oak provided credit to JJB DC by factoring JJB DC invoices which effectively resulted in purchasing JJB DC invoices at a discount.

31. For some time pre-petition, JJB DC had engaged in a practice regarding invoices factored by White Oak known within JJB DC as "pre-billing."

32. "Pre-billing" involved submitting invoices to White Oak for work that JJB DC had not yet performed and receiving payment from White Oak for those invoices before JJB DC had actually performed the work.

33. After an opportunity for discovery, the United States Trustee expects that the evidence will show that, in addition to "pre-billing", JJB DC also submitted inflated and completely false invoices to White Oak and received payment from White Oak for those invoices.

34. After an opportunity for discovery, the United States Trustee expects that the evidence will show that most, if not all, of the "pre-billed" invoices, inflated invoices and false invoices were regarding work JJB DC was allegedly to perform for Verizon.

35. JJB DC filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 2, 2023 in the United States Bankruptcy Court for the District of Columbia (the "D.C. Bankruptcy Court"). JJB DC's case was assigned case number 23-00214.

36. Defendant signed the petition commencing JJB DC's bankruptcy case on behalf of JJB DC as the president.

37. At the time JJB DC filed for bankruptcy, its primary customer was Verizon.

38. JJB DC filed its schedules and statement of financial affairs on August 30, 2023.

39. Defendant signed JJB DC's schedules and statement of financial affairs on behalf of JJB DC as the president.

40. Defendant signed declarations under penalty of perjury regarding JJB DC's Schedules and Statement of Financial Affairs filed on August 30, 2023. As provided in 28 U.S.C. § 1746, the declarations signed by Defendant had like force and effect of oaths.

41. JJB DC's Schedule A/B discloses the following regarding accounts receivable owed to JJB DC:

**Part 3: Accounts receivable**

10. Does the debtor have any accounts receivable?

☐ No. Go to Part 4.

Official Form 206A/B   Schedule A/B Assets - Real and Personal Property   page 2

Debtor: JJB D.C., Inc.    Case number (if known) 23-00214

■ Yes Fill in the information below.

11. Accounts receivable

11a. 90 days old or less:   11,464,856.08 (face amount)   -   0.00 (doubtful or uncollectible accounts)   = ....   $11,464,856.08

12. Total of Part 3.   $11,464,856.08
Current value on lines 11a + 11b = line 12. Copy the total to line 82.

42. According to JJB DC's Schedule D filed on August 30, 2023, $10,939,353.20 of JJB DC's accounts receivable was factored by White Oak.

43. According to JJB DC's Statement of Financial Affairs filed on August 30, 2023, Defendant received total compensation from JJB DC of $319,999.80 ($199,999.80 in salary and $120,000.00 in draws) in the year prior to JJB DC filing its bankruptcy petition.

44. The Section 341 meeting of creditors in the JJB DC bankruptcy case was held on September 7, 2023.

45. Defendant appeared at the JJB DC Section 341 meeting and testified under oath for JJB DC along with Mr. Odom and Brandon Coleman, JJB DC's director of finance.

46. At the JJB DC Section 341 meeting Defendant testified, under oath, as follows:[3]

> Trial Attorney for the United States Trustee: And to the best of your knowledge, is the information contained in the Statement of Financial Affairs and Schedules true and correct?
>
> Defendant: Yes. To the best of my knowledge.

47. White Oak served as JJB DC's post-petition Debtor-in-Possession lender pursuant to final order entered by the D.C. Bankruptcy Court on September 7, 2023.

48. After an opportunity for discovery, the United States Trustee expects that the evidence will show that post-petition JJB DC collected less of its accounts receivable, particularly from Verizon, than it anticipated.

49. White Oak declared a default under the Debtor-in-Possession loan documents on October 4, 2023.

50. On October 23, 2023, JJB DC and White Oak filed a joint motion to compel turnover in the JJB DC bankruptcy case seeking to compel Verizon to turn over accounts receivable totaling over 9.2 million dollars allegedly owed to JJB DC.

51. On October 31, 2023, JJB DC and White Oak withdrew their joint motion to compel turnover of the Verizon accounts receivable allegedly owed to JJB DC.

---

[3] As of the filing of this complaint, the recording of the meeting of creditors has not been transcribed by a court reporter. This quote is believed to be accurate, but inconsistencies may appear between the quotes in this motion and any transcript later prepared as a result of, for example, differences in interpretation of words or how pauses in speaking should be interpreted in the transcription process.

52. On November 30, 2023, the United States Trustee filed a motion to convert or dismiss JJB DC's chapter 11 case, or in the alternative, to direct the appointment of a Chapter 11 Trustee (the "Motion to Dismiss").

53. By Order entered December 14, 2023, the D.C. Bankruptcy Court entered an Order granting the United States Trustee's Motion to Dismiss and ordering the alternate relief requested – appointing a Chapter 11 Trustee.

54. On December 18, 2023, the United States Trustee filed a Notice appointing Lawrence A. Katz as the Chapter 11 Trustee for JJB DC.

55. JJB DC operated its business as a Debtor-in-Possession from August 2, 2023, the date of the filing of the petition, through December 18, 2023, the date Mr. Katz was appointed as Chapter 11 Trustee.

56. After an opportunity for discovery, the United States Trustee expects that the evidence will show that a significant portion of the accounts receivable disclosed on JJB DC's Schedule A/B were not actually owed to JJB DC because they were the so-called "pre-billed" invoices (representing invoices for work that had not been performed), were invoices that were improperly inflated and/or were invoices that were completely false.

57. After an opportunity for discovery, the United States Trustee expects that the evidence will show that a significant portion of the accounts receivable disclosed on JJB DC's Schedule A/B were not actually owed to JJB DC.

58. More specifically, the United States Trustee alleges that, after an opportunity for discovery, he expects the evidence will show that somewhere between five million dollars and nine million dollars of the accounts receivable disclosed on JJB DC's Schedule A/B were not actually owed to JJB DC.

59. After an opportunity for discovery, the United States Trustee expects that the evidence will show that, post-petition, JJB DC collected less of the accounts receivable allegedly owed to it by Verizon post-petition because many of the invoices allegedly owed by Verizon to JJB DC were not actually owed to JJB DC.

60. After an opportunity for discovery, the United States Trustee expects that the evidence will show that, when White Oak began investigating why collection of Verizon accounts receivable was less than anticipated it discovered the false accounts receivable allegedly owed by Verizon to JJB DC.

61. After an opportunity for discovery, the United States Trustee expects that the evidence will show that Defendant was aware in early 2023, and probably earlier, that JJB DC was obtaining payment from White Oak on invoices that were "pre-billed" (representing invoices for work that had not been performed), invoices that were improperly inflated and/or invoices that were completely false.

62. Former employees of JJB DC have offered testimony under oath that Defendant was aware that JJB DC was obtaining payment from White Oak on improper invoices prior to JJB DC's bankruptcy filing.

63. After an opportunity for discovery, the United States Trustee expects that the evidence will show that Defendant was aware in early 2023, and probably earlier, that the value of the accounts receivable on JJB DC's books were inaccurate because that value included "pre-billed" invoices, improperly inflated invoices and/or completely false invoices.

*Factual Allegations Regarding Defendant Diverting $50,000.00 from*
*JJB DC's Bankruptcy Estate for his Personal Benefit*

64. Among the assets of JJB DC was certain real property located at in the District of Columbia that JJB DC leased from a third-party.

9

65. In the fall of 2023, while JJB DC's bankruptcy case was pending, while he was the president of JJB DC and while JJB DC was a Debtor-in-Possession, Defendant entered into an agreement with either Raocore or Mr. Odom.

66. The agreement provided that Raocore or Mr. Odom would pay Defendant $50,000.00 for Raocore's use of real estate leased by JJB DC.

67. This agreement was not in writing.

68. Defendant used the $50,000.00 for Raocore's use of JJB DC's property to pay an attorney, Sam Alberts - a partner at Dentons US LLP, to represent him personally.

69. After an opportunity for discovery, the United States Trustee expects that the evidence will show that the $50,000.00 was sent directly from Raocore to Dentons US LLP, the law firm retained by Defendant.

70. In the alternative, the $50,000.00 was sent directly from Mr. Odom, or from a bank account under his control, to Dentons US LLP, the law firm retained by Defendant.

71. The $50,000.00 was transferred from Raocore or Mr. Odom to Dentons US LLP on or about October 16, 2023.

72. Dentons US LLP and Mr. Alberts represented Defendant personally and did not represent JJB DC.

73. No application to employ Dentons US LLP or Mr. Alberts to represent JJB DC was filed in the JJB DC bankruptcy case.

74. Dentons US LLP filed at least one pleading in the JJB DC bankruptcy case stating that it represented Defendant personally.

**First Cause of Action – 11 U.S.C. §§ 727(a)(7) and 727(a)(2):**
**The $50,000 Diverted From JJB DC**

75. The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 2, 4-24, 27, 35, 48-19 and 64-74 (inclusive).

76. Section 727(a)(7) of the Bankruptcy Code provides as follows:

(a) The court shall grant the debtor a discharge, unless---

> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

77. Section 727(a)(2) provides as follows:

(a) The court shall grant the debtor a discharge, unless---

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

78. Defendant caused the sum of $50,000.00 for the use of JJB DC property, payable by Raocore or Mr. Odom, to be transferred to a law firm for the purpose of retaining a lawyer to represent him personally.

79. The $50,000.00 diverted by Defendant was property of JJB DC's bankruptcy estate. *See* 11 U.S.C. §§ 541(a)(1) and (6).

80. Defendant caused the $50,000.00 to be transferred by Raocore or Mr. Odom directly to the law firm representing him personally so that those funds would not appear in JJB DC bank accounts that were subject to disclosure in JJB DC's chapter 11 case.

81. By diverting $50,000.00 from the JJB DC bankruptcy estate as alleged herein, Defendant intended to hinder, delay or defraud the creditors of JJB DC by transferring and

11

removing property, the $50,000.00, of JJB DC, which was a Debtor-in-Possession at the time, for his personal use and benefit.

82. By diverting $50,000.00 from the JJB DC bankruptcy estate as alleged herein, Defendant intended to hinder, delay or defraud the creditors of JJB DC by concealing this property, the $50,000.00, from JJB DC's creditors, the D.C. Bankruptcy Court and the United States Trustee by causing it to be paid directly to the law firm representing him and not causing it to be paid to JJB DC.

83. By diverting $50,000.00 from the JJB DC bankruptcy estate as alleged herein, Defendant intended to hinder, delay or defraud the creditors of JJB DC by concealing this property, the $50,000.00, from JJB DC's creditors, the D.C. Bankruptcy Court and the United States Trustee by not entering into a written agreement with Raocore or Mr. Odom for the use of JJB DC's property.

84. Defendant used his ownership of and control over JJB DC to direct the transfer of the $50,000.00 that should have been paid to JJB DC to be paid for his personal benefit instead as alleged herein.

85. Defendant was an insider of JJB DC at the time of the transfer of the $50,000.00 as alleged herein.

86. JJB DC was an insider of Defendant at the time of the transfer of the $50,000.00 as alleged herein.

87. The diversion of the $50,000.00 by Defendant as alleged herein took place within one year of the date he filed his petition in this Court (Bankruptcy Case Number 24-60405).

88. Defendant's discharge should be denied under 11 U.S.C. §§ 727(a)(7) and 727(a)(2).

**Second Cause Of Action – 11 U.S.C. §§ 727(a)(7) and 727(a)(4)(A):
False Oaths Regarding the Disclosure of Accounts Receivable Owed to JJB DC**

89. The allegations set forth above are incorporated herein as if repeated in their entirety, particularly paragraphs 2, 4-20 and 23-63 (inclusive).

90. Section 727(a)(7) of the Bankruptcy Code provides as follows:

(b) The court shall grant the debtor a discharge, unless---

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

91. Section 727(a)(4)(A) provides as follows:

(a) The court shall grant the debtor a discharge, unless---

(4) the debtor knowingly and fraudulently, in or in connection with the case

(A) made a false oath or account;

92. Plaintiff objects to the discharge of Defendant pursuant to 11 U.S.C. § 727(a)(7) on the grounds that Defendant knowingly and fraudulently made false oaths in and in connection with the JJB DC bankruptcy case.

93. Under penalty of perjury, Defendant certified that JJB DC's schedules and statement of financial affairs filed on August 30, 2023, were true and correct when in truth and fact, as Defendant well knew, the statements and schedules failed to accurately disclose information about JJB DC's financial affairs, businesses, creditors, and property, including, but not limited to: Providing an inaccurate answer to Questions 10 and 11 on Schedule A/B regarding the value of the accounts receivable owed to JJB DC.

94. In particular, Defendant certified under the penalty of perjury that the accounts receivable owned by JJB DC were valued at $11,464,856.08 when, in fact, he knew that the value of JJB DC's accounts receivable was inflated because it included amounts allegedly owed JJB DC

13

for "pre-billed" invoices (representing invoices for work that had not been performed), invoices that were improperly inflated and/or invoices that were completely false.

95. At the Section 341 meeting of creditors for JJB DC on September 7, 2023, Defendant gave material testimony under oath that he knew was false, including, but not limited to, the testimony identified in paragraph 46.

96. Defendant made the false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules knowing that the false statements would create a false impression about the assets available to JJB DC and its ability to successfully reorganize in chapter 11.

97. Defendant made the false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules deliberately, voluntarily and consciously.

98. Defendant's false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules were not made inadvertently or accidentally.

99. Defendant made the false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules with the intent to defraud.

100. In the alternative, Defendant made the false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules with reckless disregard for the truth sufficient to warrant an inference of fraudulent intent.

101. In particular, the United States Trustee alleges that after an opportunity for discovery, the evidence will show that Defendant, was aware, before the JJB DC bankruptcy petition was filed, of JJB DC's practice of submitting Verizon invoices to White Oak for payment that were not actually due to JJB DC and that these false Verizon invoices were included in the value of the accounts receivable disclosed on JJB DC's Schedule A/B.

102. In particular, the United States Trustee alleges that after an opportunity for discovery, the evidence will show that Defendant, was aware, that the value of the accounts receivable disclosed on JJB DC's Schedule A/B was abnormally high given the history of JJB DC's business.

103. In particular, the United States Trustee alleges that after an opportunity for discovery, the evidence will show that Defendant, as the president, a director and majority owner of JJB DC, was aware of business information regarding JJB DC such that the value of the accounts receivable disclosed on JJB DC's Schedule A/B could not have accurately reflected JJB DC's financial reality.

104. Defendant's false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules were incompatible with his own knowledge of the financial affairs of JJB DC.

105. Defendant' false statements regarding JJB DC's accounts receivable and the accuracy of JJB DC's schedules were related to a material matter in that they were material to JJB DC's business transactions, estate and assets and that they adversely affected the ability of the D.C. Bankruptcy Court, the United States Trustee and creditors to fully discover JJB DC's assets and financial condition.

106. Defendant was an insider of JJB DC at the time of he made the false oaths alleged herein.

107. JJB DC was an insider of Defendant at the time he made the false oaths alleged herein.

108. The false oaths made by Defendant as alleged herein took place within one year of the date he filed his petition in this Court (Bankruptcy Case Number 24-60405).

109. Defendant's discharge should be denied under 11 U.S.C. §§ 727(a)(7) and 727(a)(4)(A).

## *Statement Regarding Amendments*

110. The United States Trustee reserves the right to alter, amend, or supplement this complaint as more information becomes available.

WHEREFORE, Plaintiff prays that the discharge of Defendant from his debts be denied, and that Plaintiff be granted such other and further relief as is just.

Dated: March 27, 2025

MATTHEW W. CHENEY

Acting United States
Trustee for Region 4
  /s/ B. Webb King


B. Webb King (VSB #47044)
Trial Attorney
Office of the United States Trustee
210 First Street, S.W., Suite 505
Roanoke, Virginia 24011
Telephone: (540) 857-2838
Webb.King@usdoj.gov

16